COMMONWEALTH of Pennsylvania, Appellee,

v.

Ronald B. DIAZ, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 29, 2004.
Filed Jan. 31, 2005.

MaryJean Glick, Lancaster, for appellant.

Christylee L. Peck, Asst. Dist. Atty., Lancaster, for Com., appellee.

BEFORE: KLEIN, McCAFFERY and MONTEMURO *, JJ.

OPINION BY KLEIN, J.:

¶ 1 Ronald Diaz appeals from the judgment of sentence entered against him in the Court of Common Pleas of Lancaster County on March 16, 2004 following his guilty plea to 43 counts of burglary, theft by unlawful taking and criminal trespass.[1] Diaz, currently 74 years old, pled guilty but mentally ill to the above charges and was sentenced to a total term of 12 to 24 years' incarceration, consecutive to any other sentence he was currently serving. Diaz claims the trial court abused its discretion by failing to consider mitigating factors and by issuing a manifestly unreasonable sentence that amounts to a life sentence. Diaz also claims, and the trial court agrees, that the trial court illegally sentenced him on Count 16, theft by unlawful taking, where that theft occurred during a burglary for which the court also imposed a sentence. The theft should have merged with the burglary, thereby rendering the sentence illegal.

¶ 2 After a thorough review of the submissions by the parties, the official record and relevant law, we agree with Diaz and the trial court that the sentence on the theft charge should have merged with the concurrent burglary sentence. Therefore, we vacate that sentence. We disagree, however, that the trial court otherwise abused its discretion in sentencing and affirm all other aspects of the sentence.

¶ 3 The circumstances of this matter are unique. Diaz led a law abiding life until he was 53 years old. Prior to his criminal activities, Diaz was married, raised a family and held a job for a significant period of time, including running his own business. Diaz served in the Marine Corps for four years, as well. However, between 1983 and 1985, Diaz committed a series of burglaries and other related crimes[2] and sub-

---

* Retired Justice assigned to the Superior Court.

1. These charges represent 21 separate burglaries that were committed from September 2000 through April 2002.

2. The charges included theft, receiving stolen property, forgery, carrying firearms without a license and burglary.

sequently served his time in jail. Upon his release, Diaz led a law abiding life until 2000.

¶ 4 In September 2000 Diaz again began burglarizing homes. Primarily, he stole guns (both long guns and handguns) and cash. Diaz apparently picked the homes to burglarize by reading the funeral notices in the newspaper and then breaking into the homes of the immediate family of the deceased while the funeral was in progress. Diaz would then take the stolen guns to another county and sell them. In this same time frame, he was apparently doing the same thing in several other counties.[3]

¶ 5 We note that Diaz has been diagnosed with dysthymic disorder[4] by Dr. L.A. Rotenberg. Dr. Rotenberg also notes Diaz has a 134 IQ, placing him in the "very superior" range. Diaz told pre-sentence investigators he had been diagnosed as manic depressive, although there is no other indication of that diagnosis in the record.

¶ 6 Diaz now claims that the trial court committed a manifest abuse of discretion in sentencing where the court stated Diaz's mental illness would not in any manner modify or reduce his sentence and by imposing what essentially amounts to a life sentence. Framed in this manner, Diaz's challenge to the discretionary aspect of his sentence raises a substantial question and thus provides us with the opportunity to review the claim. See Commonwealth v. Mouzon, 571 Pa. 419, 812 A.2d 617 (2002). Finally, where there are no sentencing restrictions in the plea agreement, the entry of a guilty plea will not preclude a challenge to the discretionary aspects of a sentence. Commonwealth v. Messmer, 2004 PA Super 451, 863 A.2d 567 (Dec. 1, 2004)

¶ 7 Diaz's claim of abuse of discretion in sentencing is two-fold: 1) the trial court refused to consider the mental illness as a mitigating factor; and 2), a life sentence was not warranted under the circumstances.

¶ 8 Mental illness is clearly a factor that may be considered in sentencing. However, the trial court was also correct in stating that it does not mandate a modification or reduction in any sentence that would or could be imposed. N.T. Sentencing, 3/16/04, p. 14. The legislature has specifically stated as much at 42 Pa.C.S. § 9727(a), "[a] defendant found guilty but mentally ill or whose plea of guilty but mentally ill has been accepted under the provisions of 18 Pa.C.S. § 314 may have any sentence imposed on him which may be lawfully imposed on any defendant convicted of the same offense." There is no mandatory reduction in sentence because a defendant has acted due, at least in part, to mental illness.[5] In reading the entire rationale of the court in sentencing, it is apparent that the trial court considered a wide range of factors, including Diaz's depression, in fashioning a sentence. (N.T. Sentencing at 11–16.) It is also apparent that the trial court chose, in its discretion, to place greater weight on the nature of the crimes, the effect the crimes had on the victims, and Diaz's intelligence and maturity.

3. It appears that Diaz also pled guilty but mentally ill to similar charges in Berks, Schuylkill, and Chester Counties.

4. Dysthymic disorder is a form of chronic depression, but generally does not rise to the level of major depression.

5. See Commonwealth v. Guth, 735 A.2d 709 (Pa.Super.1999) for an instance where mental illness played no mitigating factor. Guth pled guilty but mentally ill to attempted burglary, yet was sentenced beyond the aggravated range to a term of 4 to 20 years' incarceration.

¶ 9 Given the totality of the trial court's comments during sentencing, we cannot agree with Diaz that the trial court ignored the possible mitigating circumstance of mental impairment. Rather, we believe the trial court's comments, taken in context, to mean that in this matter Diaz's depression did not entitle him to a reduction in sentence. Therefore, we do not believe the trial court abused its discretion here.

■ ¶ 10 The second aspect of the claim is that the sentence, 12 to 24 four years, represents a virtual life sentence and is, therefore, manifestly excessive. There are times when such a claim is supportable. *See Commonwealth v. Dodge*, 859 A.2d 771 (Pa.Super.2004). In *Dodge*, the defendant was convicted of 37 counts of receiving stole property (some of which was costume jewelry valued at less than $20.00 per item) and received 37 consecutive 17 to 36 month sentences. Given the totality of the circumstances presented there, we found the virtual life sentence to be manifestly excessive.

¶ 11 The circumstances presented in *Dodge* are not parallel to those presented here. Here, the trial court did not sentence on all 42 counts and run those sentences consecutively. In fact, the trial court stated it would be very simple to do just that. However, the trial court also recognized that such a sentence would border on the absurd. (N.T. Sentencing at 15–16.) Rather, the trial court took into consideration the time frame of the crimes and used that as a basis for sentencing. The trial court sentenced Diaz to one term for those crimes committed in 2000, an equal and consecutive sentence for those committed in 2001, and a final equal and consecutive sentence for those committed in 2002. Each of the individual sentences was in the standard range for the crime sentenced. Although the final result is a long sentence, we cannot say that the trial court abused its discretion in fashioning the sentence in this manner.

¶ 12 A final point on this issue is that the sentence imposed was foreshadowed by the trial court during the guilty plea.

The Court: And the reality is—we'll get through that in a moment—but the reality is, given the nature of the offense and the number of the offenses, a very real possibility exists that you will spend the rest of your life in prison. Do you understand that?

Diaz: Yes.

(N.T. Guilty Plea, 12/22/03, p. 7.)

¶ 13 Diaz was clearly informed of the very real likelihood of a long sentence even before his guilty plea was accepted. Diaz understood the possible consequences of his plea. The trial court, after reviewing all the information before it, including testimony from victims, victim impact statements as well as pre-sentence reports and psychological reports, then sentenced Diaz in the manner it had indicated was a possibility.

■ ¶ 14 The final issue raised by Diaz, improperly sentencing him for crimes that should have merged, has merit. The trial court has recognized this and asked that we vacate that sentence and remand for resentencing. As indicated by the trial court, Count 16 of the bill of information represents a theft that occurred during the course of another burglary (it appears that Diaz stole from two people as the result of a single break-in) and therefore the theft merges with the corresponding burglary. *Commonwealth v. Flynn*, 314 Pa.Super. 162, 460 A.2d 816 (1983). We vacate the sentence on Count 16 and remand this matter for resentencing.

¶ 15 Judgment of sentence affirmed in part, vacated in part, and remanded for

resentencing in accordance with this decision. Jurisdiction relinquished.